UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANNA BUCCINI,

                Plaintiff,

vs.                                   Case No. 2:08-cv-698-FtM-29DNF

STATE OF FLORIDA DEPARTMENT OF
CHILDREN AND FAMILY SERVICES, THE
FLORIDA DEPARTMENT OF ENVIRONMENTAL
PROTECTION, ERICA CEASAR, RON MOORE,

                Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants Erica Cesare and Ron Moore's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #26) filed on March 16, 2009. Plaintiff Anna Buccini filed her Response (Doc. #29) on April 1, 2009. Defendants Erica Cesare and Ron Moore seek dismissal of Count IV because it does not state a claim and because they are entitled to qualified immunity. Count IV, the only count attempting to allege a federal cause of action, alleges a violation of plaintiff's civil rights under 42 U.S.C. § 1983 by these two defendants in their individual capacities.

**I.**

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 93 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly

suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The former rule--that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)--has been retired by Twombly. James River Ins. Co., 540 F.3d at 1274.[1] Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The Court need not accept as true legal conclusions or mere conclusory statements. Id.

The Eleventh Circuit imposes "heightened pleading requirements" for § 1983 cases which involve individuals entitled to assert qualified immunity. Passmore Swann v. S. Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004)(citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993)). The heightened pleading standard requires some factual detail in the pleadings. "The purpose of the

---

[1] Therefore the Court rejects the standard set forth by plaintiff. (Doc. #29, pp. 4-5.)

heightened pleading standard is for the plaintiff to provide facts with 'sufficient detail for Defendants to understand what alleged rights were violated . . . and which of their actions allegedly violated those rights,' as well as 'for the court to determine whether those facts indeed set out a violation of rights and whether those rights were clearly established when these incidents occurred.'" Harper v. Lawrence County, 584 F.3d 1030, 1036 (11th Cir. 2009)(citations omitted).

**II.**

The following material facts are set forth in the Amended Complaint (Doc. #25): In September 2004, Anna Buccini's (plaintiff or Buccini) grandchild was sheltered with her as part of a dependency proceeding. Some time thereafter defendant Erica Cesare (Cesare), the assigned case worker and an employee of the State of Florida Department of Children and Family Services (DCF), requested Buccini and Buccini's common law husband (referred to as the grandfather) to submit to a drug test and home study. Buccini complied but the grandfather refused. Nothing in the case plan or any court order required drug screening of the grandparents.

An arraignment hearing for the biological parents was held on or about November 3, 2004. At this hearing, Cesare raised the issue of removal of the child from Buccini because the grandfather did not want to submit to the drug screen and home study. The state judge denied the request to remove the child from Buccini, but stated that if the grandfather continued to refuse to take and

pass a drug screen and comply with the home study process, Buccini could continue to have placement of the child only if Buccini resided in an approved residence without the grandfather. On or about November 5, 2004, the state judge signed an Order to this effect. On or about November 8, 2004, the attorney for Buccini and the grandfather phoned Cesare and sent her a facsimile letter advising that the grandfather had agreed to meet with her and that he would submit to a drug screen. Cesare did not respond to the letter or phone message.

On or about November 15, 2004, Buccini and the minor child arrived at DCF for the child's visitation with the mother. After the visit, Cesare told Buccini to give Cesare the child, but Buccini repeatedly refused. Cesare then told Buccini she could not leave and that there was a judge's order that Buccini had to give up the child. Cesare than solicited assistance from the Florida Department of Environmental Protection (DEP), which is housed in the same building as the DCF. Ron Moore, an employee of the DEP and a certified law enforcement officer,[2] told Buccini that he would arrest her if she was not nice. Buccini told Moore that Ceasar was lying and there was no court order. Moore stated that the DCF attorney had faxed the information, and he would arrest her if she did not give up the child. Moore saw no paperwork in the matter, but relied on Cesare's statements. Buccini refused to give

---

[2] In her Response, plaintiff stated she no longer disputes that Moore is a certified law enforcement officer. (Doc. #29, n.1.)

up the child, and Moore grabbed and twisted Buccini's right hand while a DCF employee took the child from Buccini. In doing so, Moore broke the tendons in Buccini's hand.

At a hearing on November 16, 2004, the DCF attorney admitted there was no court order authorizing the child's pick up. At this hearing, Cesare claimed that Buccini had failed to move out of the home with the grandfather, but acknowledged having received the letter that stated the grandfather was willing to meet with her and submit to a drug screen. The Judge arranged for the grandfather to take a drug test that day, which he passed, and the child was returned to Buccini. Buccini remained the child's legal guardian until the child was reunited with her parents pursuant to the case plan. Buccini had to undergo surgery to reconnect the tendons in her right hand and continues to have limited use of it.

Only Count IV of plaintiff's Amended Complaint[3] pertains to Cesare and Moore as individuals. Plaintiff alleges that Cesare and Moore, acting in concert, held plaintiff against her will and forcibly removed the child with deliberate indifference and reckless disregard for her Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure, which includes the right to be free from excessive force, in violation of 42 U.S.C.

---

[3]The Court previously dismissed Count IV of Buccini's Complaint (Doc. #24) but allowed Buccini an opportunity to file an amended complaint to cure pleading deficiencies, including to more specifically identify the contours of the Fourth/Fourteenth Amendment right(s) plaintiff alleged were violated.

§ 1983.  Without elaboration, Plaintiff also alleges that Defendants violated her First and Fourteenth Amendment right to familial association with the child.

### III.

Defendants Cesare and Moore raise the defense of qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Mann v. Taser Int'l, Inc., No. 08-16951, 2009 U.S. App. LEXIS 26155, at *21-22 (11th Cir. Dec. 2, 2009) (internal citations and quotation omitted).

The standard for qualified immunity is well established. First, the government official must show that he was engaged in a "discretionary function" when he committed the allegedly unlawful acts.  If the official acted within his or her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  To do this plaintiff must show: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation. See Corey Airport Servs., Inc. v. Decosta, No. 08-15845, 2009 U.S. App. LEXIS 25048 at *14 (11th Cir. Nov. 16, 2009); Mann, 2009 U.S. App. LEXIS 26155, at *22.

**A.**

To establish an entitlement to qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he or she was acting within the scope of his or her discretionary authority. <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1281 (11th Cir. 1998). "When a government official goes completely outside the scope of his discretionary authority, he ceases to act as a government official and instead acts on his own behalf. Once a government official acts entirely on his own behalf, the policies underlying the doctrine of qualified immunity no longer support its application. For that reason, if a government official is acting wholly outside the scope of his discretionary authority, he is not entitled to qualified immunity regardless of whether the law in a given area was clearly established." <u>Id.</u>

Defendants assert that the facts set forth in the Amended Complaint establish they each acted within the scope of their discretionary authority. Plaintiff disagrees, and asserts that since there was no court order that authorized the pick up of the child, Defendants were not acting in an <u>authorized</u> manner, thus they were not acting within the scope of their discretionary authority.

"To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of

his duties, and (2) within the scope of his authority. [ ] To that end, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Gray ex. rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006)(internal citation omitted); see also Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). "[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen with his legitimate job description." Harland, 370 F.3d at 1266 (emphasis in original). "After determining that an official is engaged in a legitimate job-related function, it is then necessary to turn to the second prong of the test and determine whether he is executing that job-related function - that is, pursuing his job-related goals in an authorized manner." Id.

Cesare and Moore, as a child protective investigator and authorized agent of DCF and a certified law enforcement officer, respectively, each had the ability to take a child under custody pursuant to Florida Statute § 39.401.[4] Contrary to plaintiff's

---

[4] A certified law enforcement officer of the DEP is a law enforcement officer of the state of Florida with full power to investigate and arrest for any violation of the laws of the state. FLA. STAT. § 20.255(4). Furthermore, all state, county, and local agencies are required to cooperate and assist the Office of Adoption and Child Protection and the department to fulfill their responsibilities under Chapter 39. FLA. STAT. § 39.0014.

argument, the issue is not whether it was within Defendants' authority to commit the illegal act, but whether the act, if done for a proper purpose, would be within or reasonably related to the outer perimeter of the officials discretionary duties. James, 157 F.3d at 1282. Since Ceasar's duties include taking custody of children, and Moore's duties include assisting other law enforcement officers such as Ceasar, both Defendants have established that they were acting within the scope of their discretionary authority. This is not undermined by the fact that they may have conducted the action in an unconstitutional manner. O'Rourke v. Hayes, 378 F.3d 1201, 1205-06 (11th Cir. 2004).

**B.**

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Bostic, 458 F.3d at 1303. This is done by showing that the officers violated a constitutional right, and that the right was clearly established at the time of the incident. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005)(citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).

The first inquiry is to determine whether Plaintiff has sufficiently alleged a constitutional violation. "Without a . . . violation, there can be no violation of a clearly established right." Smith v. Siegelman, 322 F.3d 1290, 1295 (11th Cir. 2003). In the instant case, Buccini alleges that there were three

constitutional violations. Buccini alleges that Cesare and Moore unlawfully detained her and inflicted an excessive use of force in violation of her Fourth and Fourteenth Amendment rights to be free from unlawful search and seizure, and violated her First and Fourteenth Amendment right to familial association with the child.

**Unlawful Detention:**

Buccini argues that there was no probable cause to believe that Buccini had materially violated a condition of placement imposed by the court, and thus no grounds for Cesare and Moore to detain and restrain Buccini and remove the minor child. (Doc. #25, ¶¶ 92-97.)

The Fourth Amendment, as applied to the state by and through the Fourteenth Amendment, provides a right to be secure against unreasonable searches and seizures. U.S. CONST. amend. IV; Hardy v. Broward County Sheriff's Office, 238 Fed. Appx. 435, 440 (11th Cir. 2007). "While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity. We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007). In the context of a claim for a seizure based upon false arrest or detention, an officer is entitled to qualified immunity if he or she had "arguable probable cause," which the Eleventh Circuit has defined as situations where

"reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s] could have believed that probable cause existed to arrest" the plaintiff. Skop, 485 F.3d at 1137; Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006).

Under the facts set forth in the Amended Complaint, both Cesare and Moore had at least arguable probable cause to detain Buccini in order to obtain custody of the child. Buccini acknowledges that prior to the detention by Cesare and Moore, the state judge ordered that the child could only continue to be placed with her if the grandfather submitted to a drug screen or if she resided without the grandfather. As of the November 15, 2004 incident, neither condition was satisfied. Thus, both officers could reasonably believe that Buccini was in violation of a condition of placement imposed by the court. Moore was not required to credit plaintiff's assertion of no court order over the information he received from a fellow officer that a court order existed. Receiving inconsistent information does not preclude finding probable cause. See, e.g., Case v. Eslinger, 555 F.3d 1317 (11th Cir. 2009). Therefore, both Defendants are entitled to qualified immunity as to the detention.

**Excessive Force:**

According to Buccini's Amended Complaint, Moore stated that he was going to arrest her if she wasn't nice, he then grabbed and twisted her right hand while another DCF employee took the child from Buccini. (Doc. #25, ¶¶ 72-78.) Since Moore used intentional

physical force against Buccini, it was a "seizure" under the Fourth Amendment. Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (citing Brower v. County of Inyo, 489 U.S. 593, 597 (1989)). Thus, the excessive force claim must be analyzed under the Fourth Amendment and its objective reasonableness standard. See Wilson v. Northcutt, 987 F.2d 719, 722 (11th Cir. 1993); Graham v. Connor, 490 U.S. 386, 395 (1989).

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). The reasonableness inquiry in an excessive force case concerns whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004). When determining whether the force used to effect a seizure is reasonable for purposes of the Fourth Amendment, a court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotations omitted). The use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, keeping in mind that the right to make an arrest - or in this case remove a child - carries with it the right to use some degree of physical force or the threat of force. To

balance the necessity of the use of force used against the arrestee's constitutional rights, a court must evaluate several factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  Whether the use of force was reasonable must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  See Beshers, 495 F.3d at 1266-68; Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).

According to the Amended Complaint, Moore grabbed and twisted Buccini's right arm when she repeatedly refused the order to surrender the child, then released the arm when another officer obtained the child.  Because the use of force under these circumstances was objectively reasonable, Defendants Cesare and Moore are entitled to qualified immunity.

**Family Association:**

In Buccini's Amended Complaint, she alleges that Defendants Cesare and Moore acted in "deliberate indifference and reckless disregard" of her First and Fourteenth Amendment right to familial association with the child.  (Doc. #25, ¶ 102.)  Buccini neither elaborates on this claim in her Amended Complaint or Response, nor do Defendants specifically address it in their Motion to Dismiss.

The Supreme Court has recognized that parents and grandparents have a constitutionally protected liberty interest in the care, custody and education of their children and grandchildren. Moore v. East Cleveland, 431 U.S. 494, 499 (1977); see also, M.L.B. v. S.L.J., 519 U.S. 102, 116 (1996) (plurality opinion); Lehr v. Robertson, 463 U.S. 248, 258 (1983) ("the relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection")). However, the right of familial association is not absolute and may be outweighed by a legitimate government interest. See, e.g., Moore, 431 U.S. at 499-500. "To prevail on a claim of family privacy, parents need to prove that a state actor interfered with a protected liberty interest without sufficient justification. This constitutional tort requires no element of intent." Foy v. Holston, 94 F.3d 1528, 1536 (11th Cir. 1996)). When deciding whether Defendants should be entitled to qualified immunity, the court must ask "whether *any* reasonably officer . . . could have acted as these Defendants acted without violating federal law." Id.(emphasis in original.) "Violations of the right to family association are determined by a balancing of competing interests." Id. at 1537 (citing Manzano v. South Dakota Dep't of Social Servs., 60 F.3d 505 (8th Cir. 1995)).

Here, Buccini has failed to plead enough facts to sufficiently allege that Defendants Cesare and Moore interfered with her right to familial association or privacy without sufficient justification. While, unlike in Foy, there were no allegations of

-14-

abuse in this case, the state still has a legitimate interest in making sure that children are in homes that comply with conditions of placement imposed by the court. As stated above, Defendants could have reasonably believed that Buccini was in violation of a condition of placement imposed by the court. Because Defendants Cesare and Moore had a sufficient justification in removing the child from Buccini's custody, they are entitled to qualified immunity.

**IV.**

Since judgment is being entered on the only federal claims, the Court must decide whether to retain jurisdiction over the state law claims alleged in the other counts. Exercising its discretion under 28 U.S.C. § 1367(c), the Court declines to retain jurisdiction over these state claims. There are uniquely state law issues which relate to these state law claims, and plaintiff will suffer no prejudice if the Court declines to retain jurisdiction. Such a dismissal is encouraged where the federal claim is dismissed prior to trial. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004).

Accordingly, it is now

**ORDERED:**

1. Defendants Erica Cesare and Ron Moore's Motion to Dismiss Count IV of Plaintiff's Amended Complaint (Doc. #26) is **GRANTED,**

and Count IV is dismissed without prejudice as to Erica Cesare and Ron Moore.

    2. The Clerk of the Court shall enter judgment accordingly as to defendants Erica Cesare and Ron Moore as to Count IV; and dismissing Counts I, II and III without prejudice pursuant to 28 U.S.C. § 1367(c). The Clerk shall terminate all pending motions and deadlines as moot and close the case.

    **DONE AND ORDERED** at Fort Myers, Florida, this __18th__ day of December, 2009.

                                         */s/ John E. Steele*
                                         JOHN E. STEELE
                                         United States District Judge

Copies:
Counsel of record